UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

RASHARD J.[1],

        Plaintiff,

v.                                                  ACTION NO. 4:19cv123

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Rashard J. ("Plaintiff") seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying this, his fifth claim for disability insurance benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Specifically, Plaintiff's pro se pleadings argue in a general fashion that the residual functional capacity ("RFC") formulated by the Administrative Law Judge ("ALJ") failed to account for the effects of his mental and physical impairments; incorrectly interpreted the vocational expert's testimony regarding his ability to work; and failed to weigh evidence of disability which arose outside the period under review. Pl.'s Submission 1-3 (ECF No. 14). Defendant moved for summary judgment, arguing that the ALJ's decision is supported by substantial evidence and that none of the purported errors Plaintiff identifies warrants remand. Def.'s Mot. for Summ. J. 14-26 (ECF No. 16). Defendant also provided Plaintiff notice of his right to respond as required by Local Rule 7(K) and the Fourth Circuit's decision in Roseboro v.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

Garrison, 528 F.2d 309 (4th Cir. 1975). (ECF No. 17). This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, this Report recommends that the final decision of the Commissioner be affirmed.

## I. PROCEDURAL BACKGROUND

Plaintiff filed his current application for SSI on July 21, 2016, originally alleging that he was disabled as of September 19, 2015. During the hearing he moved to amend his alleged onset date to January 11, 2017. (R. 285-86).[2] His application was denied initially, (R. 126-36), and upon reconsideration. (R. 138-49). Plaintiff then requested an administrative hearing, which the ALJ held on October 11, 2018. (R. 42-62). On November 15, 2018, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act and denied his claim for benefits. (R. 21-41). The Appeals Council then denied Plaintiff's request for review of the ALJ's decision (R. 8-13), thereby making the ALJ's decision the final decision of the Commissioner. Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this pro se action seeking judicial review of the Commissioner's decision. This case is now before the court on the parties' cross-motions for summary judgment.

## II. FACTUAL BACKGROUND

Plaintiff was born in 1975 and was forty-one (41) years old on his amended disability onset date. (R. 36). Plaintiff's past work included brief service in the United States Army, after which he worked as a forklift operator, laborer, tire mounter, and trench digger. (R. 248). He has not

---

[2] Plaintiff had filed a total of four earlier applications, which have all been denied. His most recent previous denial alleged an onset date of June 5, 2013. That application proceeded to a hearing before an ALJ who denied the claim on August 18, 2015. (R. 24). Plaintiff appealed the denial to this court where the denial was affirmed on July 31, 2017. Jolly v. Berryhill, No. 4:16cv38, 2017 WL 3262186 (E.D. Va. July 13, 2017).

2

worked since 2011, according to his application for benefits. (R. 247).

Plaintiff has a history of mental health treatment which was reviewed in detail when the court examined his last denial of benefits. See Jolly v. Berryhill, No. 4:16cv38, 2017 WL 3262186 at *2 (E.D. Va. July 13, 2017) (reviewing mostly outpatient mental health treatment from October 2013 to May 2015). Although most of this treatment occurred prior to his amended onset date, many of these records are also part of the present Administrative Record. (R. 354-590).

Plaintiff was seen for individual psychotherapy by his treating physician, Dr. Kathryn Bieri, on January 22, 2015, and again on March 17, 2015. (R. 310). His care was eventually transferred to Dr. Pejcharat Harvey, and Plaintiff reported for his first individual therapy session with him on May 14, 2015 (R. 304). Plaintiff met with Dr. Harvey again on June 4, 2015, at which point his mood remained dysthymic. (R. 562). Dr. Harvey also observed that Plaintiff's thoughts were marked with paranoid ideations, but that he had no hallucinations or violent ideations. Id. Plaintiff's financial and marital situation remained the primary stressors in his life. Id.

During regular outpatient visits in 2016, Plaintiff continued treatment primarily with the Department of Veterans Affairs ("VA") for schizoaffective and bipolar disorders. He occasionally reported paranoid thinking and a dysthymic mood, but his mental status exams were otherwise normal. (R. 321, 324, 331, 335, 340, 344). During a visit with Dr. Harvey in February 2016, he had a full range of affect, coherent speech, and unimpaired judgment and insight. (R. 326). In July 2016, he reported moving out of his marital residence. (R. 316). His mood at the time was dysthymic and he again had paranoid thoughts, but his thinking was coherent and goal directed. Id. He described past suicidal ideation but denied present thoughts of suicide. Id. On July 27, 2016, Plaintiff reported continued problems with relationships, but his mood was euthymic and his affect congruent. (R. 315).

3

In August 2016, Plaintiff returned for medication management and psychotherapy. He stated that his paranoia was still a problem but denied thoughts of suicide. (R. 406). He also denied depression or manic symptoms, had no problems with sleep or appetite, and denied any medication side effects. Id. During his mental status exam, he had good eye contact, and was pleasant, cooperative and alert with well-organized thoughts and normal insight and judgment. (R. 406-07). At a follow up visit in December 2016, he was essentially unchanged. (R. 452).

Plaintiff next sought psychiatric treatment in May 2017[3], a gap of approximately five months, when he returned to the VA for medication management and psychotherapy. He continued to believe people were "talking about him" but denied manic symptoms. (R. 446). He was living "house-to-house" with friends and reading the bible. Id. His mental status exam was essentially normal except for an anxious mood. Id. He was continued on the same medication with diagnoses of bipolar disorder and PTSD. At a follow up appointment in June 2017, his mood was described as euthymic, with "a greater positive affect than in previous session." (R. 445). His mental status was unchanged, and he was continued on medication and directed to follow up.

Plaintiff next sought treatment in January 2018, another six-month gap, where his symptoms were essentially unchanged. He was in the process of getting a divorce and was distrustful of his wife, but his mood was euthymic with a congruent affect and normal, relevant speech. (R. 709). During group therapy in 2018, Plaintiff was actively engaged, sharing feedback and supporting other veterans. He reported that his mood was good. (R. 639). At a follow up individual visit in August 2018, Plaintiff was agitated but his mental status was similar to past

---

[3] As the ALJ observed, the Administrative Record contains little evidence of treatment from treatment after the amended onset date. In fact, the record is mostly comprised of medical evidence submitted and considered during Plaintiff's most recent application which was denied in 2015. Only a few records reflect treatment in 2017 with regular treatment records resuming after January 2018.

visits. (R. 628).

The only opinion evidence in the Administrative Record predates Plaintiff's last denied application. He had a consultative psychological exam by agency physician Asha Kohli, M.D., on July 24, 2013. (R. 586-87). Dr. Kohli observed that Plaintiff was clean, cooperative, and engaged, but also noticed behaviors suggestive of poor impulse control. (R. 586-88). Plaintiff's "stream of mental activity" was slow, but well organized. (R. 587). Plaintiff reported that he sometimes hears voices or knocking on the door, and that he has homicidal thoughts when he gets very angry. Id. Dr. Kohli observed that Plaintiff was depressed and very paranoid. (R. 588). As a result of this first consultative exam, Dr. Kohli opined that Plaintiff was able to understand, retain, and follow instructions, but that he would have social impairments and could not "tolerate the stress and pressure associated with day-to-day work because of anger issues, frustration and impulsiveness." (R. 588). Plaintiff's Global Assessment of Functioning[4] ("GAF") was assessed at 50. Id.

The record also includes a consultative exam by Dr. Peter Morris, M.D. from 2013. Dr. Morris diagnosed Plaintiff with chronic leg, hip, and knee pain resulting mostly from a 2007 motor vehicle accident. (R. 584). He stated that Plaintiff appeared to uncomfortable while seated but was able to ambulate and get on and off the exam table without assistance. (R. 585). He had a slow, antalgic gait and would not attempt several maneuvers, reporting there was "no way he could

---

[4] Clinicians use the GAF scale, devised by the American Psychiatric Association and ranging from zero to one hundred, to indicate an overall judgment of a person's psychological, social, and occupational functioning. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed. 2000). A GAF of 71-80 indicates that "if symptoms are present, they are transient and expectable reactions to psycho-social stressors;" a GAF of 61-70 indicates that the individual has "some mild symptoms;" a GAF of 51-60 indicates that the individual has "moderate symptoms;" and a GAF of 41-50 indicates that the individual has "serious symptoms." Id. However, the DSM-5 abandoned the use of GAF scores as a diagnostic tool for assessing a patient's functioning because of the questionable probative value of such scores. Diagnostic and Statistical Manual of Mental Disorders (DSM-V) 16 (5th ed. 2013).

do them." (R. 584). Plaintiff did not use a cane or other assistive device. (R. 583). He had normal muscle bulk and tone as well as 5/5 or 5/4 muscle strength in his upper and lower extremities. Id. Dr. Morris opined in 2013 that Plaintiff would have severe limitations with standing and walking due to his gait, limited range of motion, and "reported inability" to do other postural activity. (R. 585).

Plaintiff's records supporting this claim also include opinion testimony from his treating psychiatrist, Dr. Bieri. As with the CE testimony, Dr. Bieri's medical source statement is from 2014, three years before the onset date alleged in Plaintiff's current claim for benefits. At that time, shortly after a psychiatric hospitalization for suicidal ideation, Dr. Bieri assessed Plaintiff with marked limitations in his ability to maintain concentration and focus, perform at a consistent pace, respond to changes in routine, and deal with normal work stress. (R. 590). She assessed moderate limitations in Plaintiff's ability to get along with the general public, co-workers and supervisors, and mild limitations in the ability to carry out short simple instructions and make decisions. (R. 589-90). In addition, Dr. Bieri believed that Plaintiff would require more than four unscheduled breaks and be absent from work more than four times per month. (R. 590). Dr. Bieri was also asked to assess whether these limitations had been present since June 30, 2013. She declined to check that box on the form, noting that she had only provided treatment from the date of her evaluation, February 28, 2014. (R. 590).

Plaintiff testified that he stopped working in 2011 due to back and leg pain associated with his physical limitations. (R. 49-50). He stated that he was subject to mood swings, heard voices sometimes and that his symptoms would "come and go." (R. 50). Plaintiff described individual treatment through the VA and stated that it was difficult to be around alot of other people but that the therapy helped. (R. 51). He described medication side effects, including drowsiness and

6

weight gain. (R. 51-52). Plaintiff also testified that he had a prescription for a cane which he used occasionally. (R. 52). He believed he could sit or stand for 30 minutes at a time but that he was in pain constantly all day. Id. With regard to activities of daily living, Plaintiff stated that he tried to "stay medicated" and would ready the bible, watch TV and do some stretching. (R. 53). He was able to use the stairs at home, fix his own meals and bathe without assistance. Id. He also goes grocery shopping with his wife but stated that she would ordinarily carry the heavier items. (R. 53-54). Plaintiff testified that he did not do any yard work or have pets. (R. 54). He viewed speeches on the internet for encouragement. Id.

Although he did not have any regular social group, he did attend support group sessions through the VA for coping skills. (R. 55). On examination by his attorney, Plaintiff described a wide array of medications that he took, including sedatives, pain relievers and antidepressants. (R. 56-58).

After Plaintiff's testimony, the ALJ examined a Vocational Expert, Robert Edwards ("VE"). The ALJ first asked whether a hypothetical individual of Plaintiff's age, education and work experience, who had the capacity to do sedentary work that involved no climbing, stooping or kneeling, and limited only to simple, routine tasks involving only simple instruction without more than occasional interaction with co-workers or the general public would have jobs available. The VE identified addressing clerk (DOT Code 209.587-010), sorter (DOT Code 521.687-086), and electronics inspector (DOT Code 726.684-050) as sedentary jobs available for an individual with such limitations. (R. 60). The ALJ then added the restriction requiring a sit/stand option, and the VE described all three jobs as available with these restrictions. (R. 60). For a third hypothetical, the ALJ asked if jobs were available for a similarly limited person who is unable to sit, stand, or walk in any combination more than five hours in an eight-hour workday, or would be

7

off task more than 15% of the workday. (R. 60). The VE answered "No." Likewise, the VE testified that a worker's absence for more than two days per month would preclude all work. (R. 60).

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of New York v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social Security Act, an individual must meet the insured status requirements of these sections, be under the age of sixty-five, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act. 42 U.S.C. §§ 416(i), 423. The Social Security Regulations define "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A), 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment" that makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?
2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?
3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or "Appendix 1")?
4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?
5. Does the individual's impairment or impairments prevent him or her from doing any other work?

9

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520, 416.920. The burden of proof and production rests on the claimant during the first four steps but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

### A. The ALJ's Decision

In this case, the ALJ first noted that the findings necessary to the final decision on Plaintiff's prior claim for disability would be given appropriate weight under the five-step inquiry. Albright v. Commissioner, 174 F.3d 473 (4th Cir. 1999). The ALJ then made the following findings under the five-part analysis: (1) Plaintiff had not engaged in gainful activity since his alleged onset date of January 11, 2017; (2) he had severe impairments of schizoaffective disorder, bi-polar-type depression, PTSD, back disorder, right leg disorder, disorders of the feet and ankles, and obesity; (3) he did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in Appendix 1; and (4) he had the RFC to perform sedentary work activities with the following limitations: He could have no more than occasional interaction with coworkers, supervisors, and the public; he could perform simple, routine,

repetitive, non-production job tasks; and he had to avoid climbing and any pushing or pulling using foot controls. In addition, due to side effects of medication and his mental impairments, he would be limited to short, simple instructions and simple routine tasks, with only occasional changes in work setting. (R. 27-35). At step five, relying on the VE's testimony, the ALJ concluded that jobs which Plaintiff can perform exist in significant numbers in the national economy. (R. 36-37).

In making her RFC determination and finding of no disability, the ALJ observed that Plaintiff's previous applications had all relied upon medical opinions from before his current onset date and that he relied on those same opinions in his existing claim. (R. 30-32). She discussed these opinions from Dr. Morris, Dr. Kohli, and Dr. Bieri, but gave little weight to them, agreeing with the prior ALJ's analysis and noting that they were even less persuasive now given the additional passage of time. (R. 32). The ALJ also found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely credible" for reasons she described in her RFC analysis. (R. 31).

Plaintiff's pro se filings, though difficult to analyze, appear to present three arguments urging the court to reverse or vacate the Commissioner's decision. First, he argues generally that he is more disabled than found by the ALJ, asserting that several medical providers concluded he was unable to work. Pl.'s Mem. Supp. Mot. Summ. J. 1 (ECF No. 14). Second, Plaintiff's motion argues that the ALJ improperly rejected evidence from the VE which suggested he was fully disabled. Id. Finally, he argues that certain evidence was "not brought forth," or not "fully explored" during the hearing process related to his diagnosis of PTSD. Id. at 2. This report examines each argument and recommends that the court find that the ALJ's decision was supported by substantial evidence because the ALJ did not err in assessing Plaintiff's RFC, properly relied

11

on the VE's testimony, and considered all the record evidence of Plaintiff's PTSD diagnosis.

**B.     The ALJ Properly Accounted for Plaintiff's Mental and Physical Impairments When Making Her RFC Determination**

I have construed Plaintiff's general complaints about the evidence as an attack on the ALJ's RFC findings, and the sufficiency of the evidence to support it. An RFC is the plaintiff's maximum ability to work despite his impairments. 20 C.F.R. § 404.1545(a)(1); see Social Security Ruling 96-9p, 1996 WL 374185 (July 2, 1996) ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis."). When, as is the case here, a plaintiff's impairments do not meet or equal a listed impairment under step three of the sequential analysis, the ALJ must determine the plaintiff's RFC. 20 C.F.R. § 404.1520(e). At step four, the ALJ then determines whether the plaintiff can perform his past relevant work. Id. § 404.1545(a)(5)(i). If the ALJ determines that the plaintiff cannot perform any relevant past work, as was the case for Plaintiff, the ALJ uses the RFC at step five to determine if the plaintiff can "adjust to any other work that exists in the national economy." Id. § 404.1545(a)(5)(ii).

The ALJ is responsible for determining a plaintiff's RFC at the administrative hearing level, and in making this determination, the ALJ considers all of the relevant medical and other evidence[5] in the record. Id. §§ 404.1527(b), 404.1545(a)(3), 404.1546(c). "[R]elevant evidence . . . includ[es] information about the individual's symptoms and any 'medical source statements' – i.e., opinions about what the individual can still do despite his or her impairment(s) – submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

---

[5] "Other evidence" includes "statements or reports from [the claimant], [the claimant's] treating or nontreating source, and others about [the claimant's] medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how ... impairment(s) and any related symptoms affect [the claimant's] ability to work. 20 C.F.R. § 404.1529(a).

12

Here, the ALJ determined that Plaintiff has the RFC to perform sedentary work involving the performance of simple, repetitive tasks with added limitations on climbing, and interaction with co-workers and the general public. (R. 30). Plaintiff's pro se pleadings do not identify any medical opinion evidence she overlooked or improperly discounted. Instead, he contends that the Agency's consultative examiners (CE) and one of his treating psychiatrists "found [him] disabled," and thus the ALJ's contrary conclusion should be remanded. This is incorrect.

To begin with, a finding that a claimant is disabled or not disabled is reserved to the Commissioner, and a physician's opinion on that ultimate issue is entitled to no special deference. Thompson v. Astrue, 442 Fed. Appx 804, 808 (4th Cir. 2011). Moreover, while the physicians Plaintiff points to did offer opinions on certain limitations imposed by Plaintiff's impairments, the ALJ in this case – like the one who considered the same opinions in denying Plaintiff's last claim – explained why she did not believe their testimony established total disability. With regard to the psychiatric CE by Dr. Kohli, the ALJ agreed with the previous ALJ's finding that Dr. Kohli had relied too much on Plaintiff's subjective statements, which were contradicted by other evidence in the record. (R. 32, 111, 586-87). In addition, Dr. Kohli's[6] opinion – prepared in July 2013 – predated Plaintiff's alleged onset date in this claim by almost four years, and his recent medical history revealed large gaps in treatment, and only modest mental limitations.

Likewise, Dr. Morris, the CE who considered Plaintiff's physical limitations in his earlier application, leaned heavily on his subjective statements. (R. 31, 111, 583-85). Though his report of July 22, 2013 also long predated the alleged onset date, the ALJ nonetheless considered it

---

[6] Dr. Kohli concluded that Plaintiff could not tolerate the stress and pressure of day-to-day work because of impulsiveness, anger issues, and frustration. (R. 588). The ALJ explicitly noted the fact that the opinion was based on a single, one-time exam and, in the ALJ's view, over-relied on Plaintiff's subjective complaints which the ALJ found inconsistent with the medical evidence of record, including Plaintiff's extensive history of group therapy.

carefully and found it consistent with the highly-restricted, sedentary RFC she imposed. More recent medical evidence revealed that Plaintiff had full motor strength and range of motion in the lower extremities and a stable gait. (R. 376-77). The ALJ did note that Plaintiff had gained significant weight since his last application and considered this aggravation of his physical limitations in imposing a sedentary exertional limit. (R. 33).

Finally, Plaintiff mentions his treating psychiatrist, Dr. Bieri, his prior hospitalization from 2014, and his various GAF scores as evidence supporting his disability. But the ALJ's opinion carefully considered all this evidence, in so far as it was relevant to Plaintiff's condition in 2017, when his alleged onset of disability began. Dr. Bieri, one of Plaintiff's treating psychologists, had imposed marked restrictions on Plaintiff's ability to work regularly or deal with normal work stress in 2014. The previous ALJ assigned her opinion little weight, finding the assessment "too severe," and inconsistent with the claimant's treatment history and activities of daily living. Specifically, he cited Plaintiff's functional reports which variously stated that he could manage his own finances, prepare light meals, use public transportation, and shop in stores. He also conducted a detailed review of Plaintiff's mental health treatment during the relevant time period, noting that his complaints during treatment were primarily related to marital difficulties with his wife and financial stress. The current ALJ agreed with this assessment, she noted that Plaintiff's mental status exams from 2016 forward were generally good. (R. 34). Though she acknowledged a pattern of persistent paranoid thoughts, she cited more recent records indicating Plaintiff participated actively in group settings and responded favorably to his medications. Id.

As shown by the ALJ's analysis, she discussed the evidence presented in the record and fashioned an RFC that accounted for Plaintiff's functional limitations which was supported by substantial evidence in that record. Where medical evidence conflicts, it is the ALJ's job to assess

that evidence in the context of the claimant's allegations and determine the work-related limitations imposed by his impairments. King v. Califano, 599 F.2d 597, 599 (4th Cir. 1997); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Here, the ALJ properly examined the evidence in the record and discussed the weight she gave to the evidence, and specifically assigned "little weight" to the opinions Plaintiff now relies upon. Her decision assigning Plaintiff's RFC is supported by substantial evidence.

### C. The VE's Testimony was Sufficient Evidence to Meet the Commissioner's Burden at Step 5.

Plaintiff also argues that the ALJ should have accepted testimony from the VE that he was completely disabled. (ECF No. 14, at 2) ("Vocational expert found me disabled the day of court"). The VE's testimony was necessary because Plaintiff had no relevant past work, and thus the burden shifts to the Commissioner to establish that there is work in significant numbers in the national economy which Plaintiff could perform. Guiton v. Colvin, 546 Fed. App'x 137, 141 (4th Cir. 2013).

But Plaintiff's argument on this subject misinterprets the VE's testimony. As recited above, the ALJ asked the VE multiple hypothetical questions premised on a range of limitations presented by the evidence before her. The last of these presented various limitations which were <u>not</u> incorporated in Plaintiff's RFC. Because these additional limitations – including an inability to sit, stand or walk in any combination more than five hours – were not part of Plaintiff's record of impairment according to the ALJ, she did not err in failing to rely on the VE's testimony that such limitations would preclude all work. See Johnson v. Barnhart, 434 F.3d 650, 659 (For VE's testimony to be relevant, it must be based on "a consideration of all other evidence in the record."). When substantial evidence supports the ALJ's findings on the extent of a claimant's limitations, relying on hypotheticals which omit more severe limitations does not require remand. Id.

In this case, when responding to the ALJ's first two hypotheticals, the VE identified three different jobs which he stated that Plaintiff could perform given the RFC outlined in the ALJ's hypothetical: addressing clerk, sorter, and electronics inspector. (R. 59-60). The ALJ also asked the VE, "Are there any inconsistencies, apparent or otherwise, between your testimony and the DOT?" The VE stated that the sit/stand option incorporated in the second hypothetical was not addressed by the DOT, but that his testimony was "based on my knowledge and experience." (R. 61).

With respect to the third hypothetical the ALJ imposed more severe restrictions, including an inability to "sit, stand, or walk in any combination" more than five hours per day, and an individual "off-task 15 percent or more of the workday on average." (R. 60). The VE stated that these restrictions would preclude all work. (R. 61). In fact, when the "ALJ turned the witness over to Plaintiff's representative, he asked no questions, observing that "the last set of hypotheticals essentially covered what I would have been prepared to ask." Id. But the ALJ ultimately did not find these severe limitations advocated by Plaintiff and his representative resulted from Plaintiff's impairments. As a result, she did not rely on this testimony in reaching a conclusion at Step. 5 that Plaintiff could perform the jobs identified.

As this review of the testimony demonstrates, the positions described by the VE fit within the RFC limits found by the ALJ. Because the third hypothetical she posed included additional limits not imposed in Plaintiff's RFC, the ALJ did not err in not relying upon the VE's answer to that third hypothetical and finding work Plaintiff could perform in the national economy.

**D.      The ALJ properly analyzed evidence related to Plaintiff's PTSD.**

Plaintiff's final argument relates to evidence underlying his diagnosis of PTSD. He relies, in part, on evidence he claims was not submitted to the ALJ. Pl's Mem. 2 (ECF No. 14). It is not

16

clear what this post-hearing evidence would be. The only materials attached to Plaintiff's opposition which post-date the hearing relate primarily to back pain and have nothing to do with PTSD. See e.g., Appointment Reminder (ECF No. 14-1, at 2). Nevertheless, this report will consider Plaintiff's claim that additional evidence warrants remand.

In order justify remand on the basis of new evidence, Plaintiff must establish that: (i) the evidence is new, not "duplicative or cumulative;" (ii) the evidence is material; (iii) the evidence relates to the period on or before the date of the ALJ's decision; and (iv) there is good cause for the failure to submit the evidence before the Commissioner. Wilkins v. Sec. Dep't of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991); see also 42 USC § 405(g). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins, 953 F.2d at 96 (citing Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985)).

Here, none of the evidence submitted along with Plaintiff's moving papers is both new and material. Much of the evidence he attached was already in the record and considered by the ALJ in both his recent denials. The only new evidence submitted appears to relate to new appointments or is cumulative of material already in the record related to Plaintiff's back pain or previous mental health treatment from 2014. Plaintiff has not offered any basis to conclude that the new evidence which was not part of the record relates to the period on or before the date of the ALJ's decision.

With respect to the evidence already in the record, the ALJ reviewed Plaintiff's treatment through the VA in detail, and unlike the ALJ in his prior claim, found his PTSD a severe impairment at Step 2. (R. 24). She also reviewed the limitations imposed by his PTSD and other mental impairments when applying the paragraph B criteria. She accurately cited records of his treatment showing that his thought process was well organized and logical. (R. 446, 633, 660). She also recognized his reports of sporadic hallucinations and paranoia could impair concentration.

17

Ultimately, she concluded that Plaintiff was moderately limited in this area. The RFC opinion accounts for these moderate limitations by limiting him to short and simple instructions and routine tasks with limited interaction with coworkers, supervisors and the general public, and requiring no more than occasional changes in work setting. Plaintiff identifies no medical record or other evidence the ALJ overlooked which would undermine her conclusion that the RFC she imposed would accommodate his mental impairments, resulting from PTSD or otherwise. Accordingly, no new material evidence warrants remand.

## V.     **RECOMMENDATION**

Because the ALJ's opinion denying benefits is supported by substantial evidence, I recommend the court GRANT the Commissioner's Motion for Summary Judgment (ECF No. 15), DENY the relief requested in Plaintiff's submission (ECF No. 14), and AFFIRM the decision of the Commissioner.

## VI.     **REVIEW PROCEDURE**

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

      2.     A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

                                           /s/
                                  Douglas E. Miller
                                  United States Magistrate Judge

                                  DOUGLAS E. MILLER
                                  UNITED STATES MAGISTRATE JUDGE

Newport News, Virginia

December 10, 2020

## Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to:

**Rashard Jolly**
509 Marcella Road Apt 10
Hampton, VA 23666

A copy of the foregoing was provided electronically this date to:

**Joel Eric Wilson**
United States Attorney Office - Norfolk
101 W Main St
Suite 8000
Norfolk, VA 23510

Fernando Galindo, Clerk

By_____E. Price_____
Deputy Clerk

___December 10_____, 2020